BILL LOCKYER Attorney General ANTHONY S. DA VIGO Deputy Attorney General
The BOARD OF TRUSTEES OF THE RIO HONDO COMMUNITY COLLEGE DISTRICT has requested this office to grant leave to sue in quo warranto upon the following question:
Did Gary Mendez abandon his residence within Trustee Area No. 4 so as to cause a forfeiture of his office as a member of the Board of Trustees of the Rio Hondo Community College District?
 CONCLUSION
Whether Gary Mendez abandoned his residence within Trustee Area No. 4 so as to cause a forfeiture of his office as a member of the Board of Trustees of the Rio Hondo Community College District does not present a substantial question of law or fact requiring judicial resolution.
 ANALYSIS
On November 22, 1999, Gary Mendez ("Mendez") was elected to the Board of Trustees ("Board") of the Rio Hondo Community College District ("District") for a four year term representing Trustee Area No. 4. The Board contends that Mendez has abandoned his residence within Area No. 4 and thus has forfeited the office to which he was elected.
According to the Board, Mendez claimed to be residing at 8315 Santa Fe Springs Road, Whittier, within Trustee Area No. 4, at the time of his election, but has not resided there or within Area No. 4 since October or November of 2000. On February 14, 2001, Mendez stated to the president of the Board that he had moved to 7325 Norwalk Boulevard, Whittier, within Area No. 4, but the Board believes that he does not now and never did reside there. Rather, the Board believes that Mendez currently resides in an apartment at 6335 Comstock Avenue, Whittier, not within Area No. 4. On May 9, 2001, Mendez stated to the Board that he does not live at 7325 Norwalk Boulevard, has never lived there, and instead lives at 6335 Comstock Avenue, where he has signed a lease and pays rent. Mendez responds by stating that he resided at 8315 Santa Fe Springs Road, Whittier, within Area No. 4, from November of 1999 to late July of 2000. He resided with his brother and sister-in-law at 7325 Norwalk Boulevard, Whittier, within Area No. 4, from late July of 2000 to May 18, 2001. He has resided at 8121 Broadway Avenue, Whittier, within Area No. 4, from May 18, 2001, to the present. A friend of his resides at 6335 Comstock Avenue, Whittier. Since July 18, 2000, he has been receiving mail at P.O. Box 2372, Whittier, within Area No. 4. On May 9, 2001, he changed his voter registration address from 8315 Santa Fe Springs Road to 7325 Norwalk Boulevard. He did not state on May 9, 2001, that he lived at the Comstock address or paid rent there. He in fact stated that he lived at the Norwalk address. On May 18, 2001, he changed his voter registration address to 8121 Broadway Avenue and registered a vehicle with the Department of Motor Vehicles specifying his address as 8121 Broadway Avenue.
This proceeding is properly initiated by a public agency under the provisions of section 803 of the to test whether Mendez "unlawfully holds or exercises any public office." (76 Ops.Cal.Atty.Gen. 157, 162 (1993).) A member of a community college district board of trustees holds a public office. (78 Ops.Cal.Atty.Gen. 316, 318 (1995); 56 Ops.Cal.Atty.Gen. 556, 557 (1973).) Vacancies on community college district boards are caused by events specified in Government Code section1770. (Ed. Code, § 5090) Government Code section 1770
provides:
 "An office becomes vacant on the happening of any of the following events before the expiration of the term:
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 "(e) His or her ceasing to be an inhabitant of the state, or if the office be local and one for which local residence is required by law, of the district, county or city for which the officer was chosen or appointed. . . .
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."
Education Code section 5030 states:
 "Except as provided in Sections 5027 and 5028, in any school district or community college district having trustee areas, the county committee on school district organization and the registered voters of a district, pursuant to Sections 5019 and 5020, respectively, may at any time recommend one of the following alternate methods of electing governing board members:
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 "(b) That one or more members residing in each trustee area be elected by the registered voters of that particular trustee area.
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."
In our view, Education Code section 5030 requires a trustee to maintain his or her residence within the trustee area for the duration of the term. (See 81 Ops.Cal.Atty.Gen. 94, 96-97 (1998).)
Government Code section 244 describes the factors to be considered when examining a person's "residence" for various purposes:
 "In determining the place of residence the following rules shall be observed:
 "(a) It is the place where one remains when not called elsewhere for labor or other special or temporary purpose, and to which he or she returns in seasons of repose.
"(b) There can only be one residence.
"(c) A residence cannot be lost until another is gained.
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 "(f) The residence can be changed only by the union of act and intent.
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."
The term "residence" in these circumstances thus connotes "domicile," the place where a person's habitation is fixed, the person intends to remain, and intends to return in seasons of repose. (83 Ops.Cal.Atty.Gen. 181, 183 (2000); 79 Ops.Cal.Atty.Gen. 21, 25-26 (1996); 75 Ops.Cal.Atty.Gen. 26, 28 (1992).) Domicile requires both physical conduct and the element of intent. (73 Ops.Cal.Atty.Gen. 197, 208-211 (1990).) A domicile is not lost until a new one is acquired. (81 Ops.Cal.Atty.Gen. 98, 101 (1998).) While an individual may have only one domicile, he or she may have multiple dwellings. (81 Ops.Cal.Atty.Gen., supra, at p. 97; 75 Ops.Cal.Atty.Gen. 287, 289 (1992).) Accordingly, the acquisition of a new dwelling does not necessarily establish a change of domicile.
In acting upon an application for leave to sue in quo warranto, we determine only whether there exists a question of law or fact that requires judicial resolution. (14 Ops.Cal.Atty.Gen. 3, 4 (1949); 11 Ops.Cal.Atty.Gen. 246, 247 (1948).) While no final judgment will be made by this office on the merits, a substantial showing must be made before we will authorize a judicial challenge to a person's right to hold public office. This is especially so when the issue is whether a public officer has moved his or her "residence" out of a public agency's boundaries, since such a change requires not only physical conduct but also intent. For example, in 81 Ops.Cal.Atty.Gen 95, supra, we observed:
 "In our view, relators' allegation that defendant has purchased a home outside the District, taken alone, is not dispositive, since an individual may have multiple dwellings as distinguished from the concept of domicile. (75 Ops.Cal.Atty.Gen., supra, 289.) In prior opinions, therefore, where such an allegation was insufficient to overcome direct evidence of an expressed intent to remain in and to return to the officer's domicile within the public agency's boundaries whenever absent for purposes of work, where such an expression was coupled with corroborative conduct, we have denied applications for leave to sue in quo warranto. (Ibid.; 75 Ops.Cal.Atty.Gen. 26, 28 (1992); 73 Ops.Cal.Atty.Gen. 427, 430 (1990).)" (Id. at p. 97.)
In analyzing whether a new domicile has been acquired by a public officer, we have traditionally considered such indicia as the address shown on the person's tax returns, driver's license, homeowner's exemption, telephone listing, voter registration, and automobile registration. (75 Ops.Cal.Atty.Gen., supra, at p. 289.)
The Board's primary contention is that Mendez changed his residence to an apartment at 6335 Comstock Avenue, a location outside of Area No. 4. Such a change, as we have seen, requires a union of physical conduct and the intent to remain there and to return there "in seasons of repose." The Board asserts that Mendez received mail at the Comstock apartment, that he stated that he had signed a lease and paid rent there, that his vehicle was observed parked there in a "tenants only" zone, and that the apartment manager "confirmed" that he was a tenant there.
However, Mendez has produced documentation that the Comstock apartment is rented to a friend of his. It is not controverted that Mendez's vehicle is registered within Area No. 4, that he is registered to vote in Area No. 4, and that he maintains a post office box in Area No. 4. Mendez's legal documents submitted in the present proceedings, including his verified statement of facts, lists his residence in Area No. 4 at 8121 Broadway Avenue, where he has been served with legal pleadings by the District. Under these circumstances, especially where Mendez has denied an intent to change his domicile to the Comstock apartment, the evidence is insufficient to institute quo warranto proceedings.
We conclude that no substantial question of law or fact has been presented requiring judicial resolution concerning whether Mendez has changed his residence to a location outside of Area No. 4. The application for leave to sue in quo warranto is therefore DENIED.